# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

WILLIAM RAY PRATT,                      )
                        Petitioner,    )
v.                                      )          Case No. CIV-04-1070-F
                                   )
MARTY SIRMONS,[1]                       )
                   Respondent.   )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, it is recommended that the petition be denied.

## I.     Relevant Case History

Petitioner was convicted by jury in the District Court of Oklahoma County, State of Oklahoma, Case No. CF-99-4266, of First Degree Rape by Instrumentation (Counts I-VI) and Child Sexual Abuse (Count VII), after Former Conviction of a Felony. Petitioner was sentenced to forty-five years of imprisonment on each count, with his sentences to run consecutively.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA). The OCCA affirmed Petitioner's conviction by summary opinion filed October 15, 2002. *See* Response [Doc. # 29], Ex. 3, OCCA Summary Opinion.

Petitioner then filed an application for post-conviction relief in the state district court which was denied. The OCCA affirmed the denial of post-conviction relief on August 10,

---

[1]Marty Sirmons is currently the warden of the Oklahoma State Penitentiary and is hereby substituted as the correct Respondent.

2004. *See* Response, Ex. 5, OCCA Order Affirming Denial of Post-Conviction Relief.

In this habeas action, Petitioner raises seven grounds for relief:

1.      Other crimes evidence violated Petitioner's due process right to a fundamentally fair trial;

2.      The cumulative effect of prosecutorial misconduct and other trial errors denied Petitioner a fundamentally fair trial in violation of his due process rights;

3.      The evidence was insufficient with respect to Count VI;

4.      Trial counsel rendered ineffective assistance in five particular aspects, and appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claims on direct appeal;

5.      Trial and appellate counsel further rendered ineffective assistance by failing to contact witnesses and failing to investigate the case;

6.      Trial counsel rendered ineffective assistance by failing to present critical evidence, and appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claim on direct appeal; and

7.      The trial judge abused his discretion by preventing the jury from hearing Petitioner's request to call witnesses and present evidence, failing to ask Petitioner who the witnesses would be and what evidence would be presented, and refusing to hear Petitioner's motion to dismiss trial counsel.  Appellate counsel was ineffective for failing to raise the issues related to the trial judge's alleged abuse of discretion on direct appeal.

Petitioner raised grounds one through three on direct appeal of his conviction.  He raised grounds four through seven in post-conviction proceedings.[2]

---

[2]In a prior Report and Recommendation [Doc. #14], it was recommended that the Petition be dismissed as time-barred under the applicable statute of limitations, 28 U.S.C. § 2244(d)(1)(A). The recommendation was adopted by Order of the Court [Doc. #16], and judgment was entered in favor of Respondent [Doc. #17].  The Tenth Circuit Court of Appeals reversed and remanded the action, *see* Mandate [Doc. #26], finding the Petition had been timely filed.  This action was then re-referred for further consideration.

II.   **Standard of Review**

Petitioner's habeas action is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, a petitioner is not entitled to habeas corpus relief if his claim has been adjudicated on the merits by the highest state court unless the state court's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) & 2254(d)(2).[3]

As the Supreme Court has explained, a state-court decision is contrary to the Supreme Court's clearly established precedent if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it confronts a set of facts "materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  "It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself."

---

[3]The AEDPA's deferential standards apply even where, as here, the state court's disposition is by summary opinion. *See Saiz v. Ortiz* 392 F.3d 1166, 1176 (10th Cir. 2004) ("When applying [AEDPA's] deferential standards in cases involving a state-court summary disposition, we focus on the result of the state court decision, not its reasoning."); *Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state appellate court's] decision unless we conclude that its result--not its rationale--is legally or factually unreasonable.").

3

*Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006) (*citing Williams v. Taylor*, 529 U.S. at 406).

A state-court decision involves an unreasonable application of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. at 413. "Even if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, [the court's] analysis is not complete. Unless the error is a structural defect in the trial that defies harmless-error analysis, [the court] must apply the harmless-error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and *O'Neal v. McAninch*, 513 U.S. 432 (1995)." *Bland*, 459 F.3d at 1009 (citation omitted).

## III.   Relevant Facts

Petitioner was charged with acts of sexual molestation and abuse against two minors, J.B. and T.M., ages twelve and thirteen years old, respectively. At the time of the alleged incidents, Petitioner was married to Wanda Pratt. J.B. is Wanda Pratt's niece, and T.M. is Wanda Pratt's daughter. The alleged incidents occurred at different times in the summer of 1999 when the children were living in the same household with Petitioner and Wanda Pratt.

J.B. testified that Petitioner got into her bed when Wanda Pratt was at work and away from home. She stated that on two separate occasions during the same day he put his fingers inside her vagina. J.B. told a friend about the incidents and later made a call to 911. During a police interview, J.B. reported that Petitioner had said he had done similar acts to T.M.

Upon police investigation, T.M. reported that Petitioner had committed similar acts against her when her mother was at work.  At trial, T.M. testified that Petitioner came into her bedroom and put his fingers in her vagina on three occasions.  T.M. testified that on another occasion, Petitioner got into T.M.'s bed, laid on top of her, rubbed his private parts against her and rubbed her chest.  T.M. testified that Petitioner would sometimes offer her cigarettes afterwards.

Two older daughters of Wanda Pratt, Stacey Mercer and Christina Rainer, testified that they also were sexually molested by Petitioner when they were around the age of thirteen, several years before Petitioner's alleged conduct with J.B. and T.M.  At the time of these prior uncharged incidents, Petitioner was not yet married to Wanda Pratt but was often present in the girls' home as a friend of their father, Wanda Pratt's former husband.  Stacey Mercer testified that in 1987 or 1988 Petitioner touched her vagina on two occasions outside her clothing when her mother was at work.  She testified that on another occasion Petitioner exposed his penis to her.  Ms. Rainer testified that in 1990 Petitioner touched her vagina on two occasions outside her clothing.  She stated that Petitioner gave her cigarettes and told her not to tell anybody.

## IV.  Analysis

### Ground One – Other Crimes Evidence

Petitioner claims that evidence of other uncharged crimes, presented at trial through the testimony of Stacey Mercer and Christina Rainer, was so prejudicial that it denied him a fundamentally fair trial in violation of due process.  Ms. Mercer and Ms. Rainer each

testified to incidents of sexual molestation when they were around the age of thirteen, occurring approximately nine to twelve years prior to the charged offenses involving J.B. and T.M.

On direct appeal, the OCCA determined the other crimes evidence was properly admitted at trial.  *See* OCCA Summary Opinion at 2.  The OCCA found that there were "sufficient similarities between the charged crimes and the 'other crimes' evidence to justify its admission."  *Id.* at 2, footnote 1.  The OCCA's determination of this issue is in accordance with Oklahoma law.  *See Myers v. State*, 17 P.3d 1021, 1029-1030 (Okla. Crim. App. 2000).

To be entitled to federal habeas relief, Petitioner must establish that the OCCA's determination of this issue is contrary to or an unreasonable application of clearly established federal law.  *See Welch v. Sirmons*, 451 F.3d 675, 687 (10th Cir. 2006).[4]  As the Tenth Circuit explained in *Welch*, the clearly established federal law governing habeas review of admission of other crimes evidence is found in the Due Process Clause of the Fourteenth Amendment which provides a mechanism for relief "when 'evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair.'"  *Welch*, 451 F.3d at 688 (*quoting Payne v. Tennessee*, 501 U.S. 808 (1991)).

Indicative of the type of evidence federal courts deem within the permissible realm of fundamental fairness in child molestation cases is federal case law construing Fed. R. Evid. 414(a) which provides:

---

[4]Where, as here, the OCCA expressly acknowledges that the prisoner alleges a denial of due process and a fair trial, AEDPA deference applies even if the OCCA relies largely on its own precedent to address the claims.  *See Welch*, 451 F.3d at 691-692.

> In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

Fed. R. Evid. 414(a). Petitioner challenges the admission of the testimony of Stacey Mercer and Christina Rainer on grounds that the alleged acts committed against them were irrelevant to the charged offenses, having occurred approximately nine to twelve years prior to the acts charged. *See* Appellant's Brief attached to Response as Exhibit 1, at 11-12. Yet, construing Fed. R. Evid. 414(a), courts have found evidence of child molestation occurring some twenty years prior to the charged incident to be temporally relevant. *See, e.g., United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001) (holding that twenty-year lapse of time did not render testimony of prior sexual abuse of a child unduly prejudicial and noting that when enacting Rule 414 "Congress expressly rejected imposing any time limit on prior sex offense evidence") (citation omitted); *United States v. Sandoval*, 410 F. Supp.2d 1071 (D. N.M. 2005) (other crimes evidence of child sexual abuse occurring twelve years prior to charged incident would be admitted at trial). *See also United States v. Koruh*, No. 99-2138, 2000 WL 342252 (10th Cir. April 3, 2000) (unpublished op.) (evidence of child sexual abuse occurring sixteen to twenty years prior to the events charged in the indictment was properly admitted where the alleged victims, like the victim of the uncharged incident, were each under the age of twelve at the time of the offense). Additionally, in Petitioner's trial the jury was given a limiting instruction with respect to the other uncharged crimes evidence. *See* Response,

Exhibit 7, Instruction Number 14.[5]  Under these circumstances, Petitioner fails to establish that admission of this evidence was so prejudicial as to deny him a fundamentally fair trial. *See, e.g., United States v. McHorse*, 179 F.3d 889, 896-897 (10th Cir. 1999) (no due process violation based on admission of evidence regarding uncharged acts of child sexual abuse where jury was instructed that such evidence was not sufficient to prove the defendant guilty of the crimes charged in the indictment).  The OCCA's determination of this issue is reasonable and did not result in a decision that is either contrary to or an unreasonable application of Supreme Court law.

Petitioner further claims trial counsel was ineffective for failing to challenge the admission of this evidence.  As to this claim, the OCCA noted that "trial counsel was not ineffective for failing to object to admissible evidence."  *See* OCCA Summary Opinion at 2, footnote 1.  To establish ineffective assistance of trial counsel, Petitioner must demonstrate that (1) counsel's performance was objectively deficient, and (2) counsel's deficiency prejudiced the defense such that, but for counsel's errors, there is a reasonable probability

---

[5]Instruction Number 14 read:

> Evidence has been received that the defendant has allegedly committed an offense other than that charged in the information. You may not consider this evidence as proof of the guilt or innocence of the defendant of the specific offense charged in the information. This evidence has been received solely on the issue of the defendant's alleged opportunity or intent or common scheme or plan. This evidence is to be considered by you only for the limited purpose for which it was received.

*Id*.

that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984). As set forth above, the other crimes evidence was properly admitted at trial. Therefore, Petitioner is not able to establish that counsel's performance was deficient or that the alleged deficient performance prejudiced his defense. Accordingly, Ground One of the Petition should be denied.

### Ground Two – Cumulative Error

In his second ground for relief, Petitioner contends the cumulative effect of prosecutorial misconduct and other trial errors denied him a fundamentally fair trial, especially when coupled with the improper admission of the other crimes evidence. Because the Court has determined in relation to the claims raised in Ground One of the Petition that the other crimes evidence was properly admitted, that evidence is not considered as part of Petitioner's cumulative error claim. *See Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003) ("In reviewing a case for cumulative error, we may only consider actual errors in determining whether the defendant's right to a fair trial was violated.") (citation omitted).

### A. Prosecutorial Misconduct

On federal habeas review, claims of prosecutorial misconduct generally are reviewed for a violation of due process. *Hamilton v. Mullin*, 436 F.3d 1181, 1187 (10th Cir. 2006). To be entitled to relief, the petitioner must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotations and citations omitted). "To determine whether a trial is rendered fundamentally unfair, [the court] examine[s] the entire proceeding, 'including the strength

9

of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase' as well as '[a]ny cautionary steps -- such as instructions to the jury -- offered by the court to counteract improper remarks.'" *Bland*, 459 F.3d at 1024 (*quoting Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002)). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Bland*, 459 F.3d at 1024.

If the alleged prosecutorial misconduct directly affects a specific constitutional right, "'a habeas petitioner need not establish that the entire trial was rendered unfair, but rather that the [specific] *constitutional guarantee* was so prejudiced that it effectively amounted to a denial of that right.'"*Hamilton*, 436 F.3d at 1187  (alteration and emphasis in original) (*quoting Torres v. Mullin*, 317 F.3d 1145, 1158 (10th Cir. 2003)).

Petitioner's individual claims of prosecutorial misconduct are reviewed with these standards in mind, but the claims are ultimately addressed in the context of a cumulative error analysis as that is the manner in which Petitioner has framed his alleged entitlement to federal habeas relief.

### 1.    The Presumption of Innocence

During first-stage closing argument, the prosecutor made the following remark: "The defendant is presumed innocent.  But, as our discussion continues, I'm going to tell you how we have stripped that innocence away and how as you consider your verdict you should

return a verdict of guilty."  Tr. Vol. III at 20-21.  No objection to this statement was made at trial.  Petitioner contends the statement constituted prosecutorial misconduct and deprived him of his constitutional right to the presumption of innocence.

In later statements during the prosecutor's closing argument, the prosecutor emphasized the State's burden to prove beyond a reasonable doubt the charges brought against Petitioner.  *See* Tr. Vol. III at 26 ("Ladies and Gentlemen, I submit to you the State of Oklahoma has proven beyond a reasonable doubt each and every element required by law, not required by this defense, but required by law."); *Id.* ("I submit to you, Ladies and Gentlemen, the State of Oklahoma has proven each and every count beyond a reasonable doubt.").  Defense counsel also emphasized the State's burden of proof.  *See* Tr. Vol. III at 28 ("Mr. William Ray Pratt is not required to prove his innocence, it's the burden of the State of Oklahoma to prove beyond a reasonable doubt that he committed all of these charges."). *See also* Tr. Vol. III at 44 ("Because remember, it's not a theory of guilt because remember, he is presumed innocent.  So their theory has to exclude all reasonable theories of his innocence.").  And, again during the State's rebuttal, the prosecutor made reference to the State's burden of proof.  *See* Tr. Vol. III at 50 ("I submit to you, Ladies and Gentlemen, the State's evidence, circumstantial evidence, proves this defendant is guilty beyond a reasonable doubt.").  The challenged remarks, therefore, were stated in a context that fully emphasized the State's burden of proof.  Under these circumstances, Petitioner cannot establish that the constitutional guarantee of the presumption of innocence was so prejudiced by the prosecutor's remarks  that it effectively amounted to a denial of that right. *Compare Patton*

11

*v. Mullin*, 425 F.3d 788 (10th Cir. 2005) (prosecutor's statements urging jury to "strip that presumption away from [the defendant]" and "strip that cloak of innocence from him" did not violate due process where in context the prosecutor's statements clearly reminded the jury that it was the state's burden to prove its case beyond a reasonable doubt).

### 2.    Eliciting Sympathy for the Victim

Petitioner next asserts that prosecutorial misconduct occurred during first stage closing argument when the prosecutor attempted to elicit sympathy for the victim by commenting on her reluctance to testify.  The prosecutor made the following statements:

> If you will recall we had to take a break right before the State called [J.B.]. She didn't want to come out here and tell you 13 strangers what happened to her. She still is embarrassed.  Officer Wellden said she was embarrassed.  She was uneasy.  She is telling a grown man about something sexual that happened to her.  I had to come out and ask the Court please can I have a moment so I can – so she can collect herself.  Is that the action of someone who has concocted a story, who is in cahoots with her cousins?  I submit to you no, Ladies and Gentlemen.  She told you what happened because it's the truth.

Tr. Vol. III at 48.  This statement was made by the prosecutor during the rebuttal phase of first-stage closing argument in response to defense counsel's closing argument suggesting the victim was fabricating the incidents of sexual abuse.  The prosecutor's statement (which did not directly affect a specific constitutional right) was a proper rebuttal comment as to the credibility of the victim's testimony and did not constitute misconduct or render Petitioner's trial fundamentally unfair.

Petitioner makes a similar argument concerning the following statements made by the prosecutor during closing argument in the sentencing phase:

> Ladies and Gentlemen, is it fair that 12, 13 year old or 14-year-old [J.B.], [T.M.], had to come in here and tell you about very personal topics in their life?
>
> * * *
>
> Is it fair that [J.B.] had to describe to you the frog leg position she had to place herself in in order to be examined by a physician?

Tr. Vol. III at 74.[6]  The prosecutor made these statements in response to defense counsel's closing argument that "both girls were not in a situation where the physical trauma was traumatic" and defense counsel's request that the jury "render a sentence which is fair . . . . in the sense of giving him a chance to put his life together and at some point in time to be able to return to society and to his family and to his friends."  Tr. Vol. III at 73.  Considering the challenged statements in context, they were fair rebuttal comments by the prosecutor.

### 3.   Determining Punishment

Petitioner next claims that prosecutorial misconduct occurred during second stage closing argument when the prosecutor asked jurors to "take into consideration four victims in 12 years."  Specifically the prosecutor stated: "For each count, Ladies and Gentlemen, take into consideration four victims in 12 years."  Tr. Vol. III at 75.  The prosecutor's remark, out of context, may potentially be somewhat confusing, but viewed in context of the entire proceedings the remark could not have led to prejudicial jury confusion.  The jury was aware through the Information, the Court's instructions and the arguments of counsel that Petitioner

---

[6]Defense counsel lodged an objection between the first and second statement on the ground that the prosecutor was attempting to inflame the jury.  The trial court overruled the objection.  *Id.*

was being charged only with acts against two victims.  And accordingly, the jury arrived at a sentence within the appropriate statutory range of sentencing on each count.

Finally, Petitioner claims that during second stage closing argument the prosecutor improperly remarked on a prior sentence Petitioner received: "As I said before, 10 is the minimum.  He got that last time.  That's certainly not where we are asking you to start today."  Tr. Vol. III at 75.  However, Petitioner was charged and sentenced after prior conviction of a felony and, therefore, it was permissible for the prosecutor to make reference to his prior felony conviction and sentence in the sentencing phase of the trial.

## B.     Evidentiary Rulings

Petitioner also claims that a number of evidentiary errors were made at trial and contends these errors were unduly prejudicial and resulted in a fundamentally unfair conviction and/or sentence.

### 1.     Exclusion of Evidence Relating to Victim's Sexual Conduct

First, Petitioner contends the trial court improperly sustained the State's objection to testimony elicited by defense counsel from Detective Sloan that the victim, J.B., had two hickeys on her breasts:

Q.    Now, during the course of your conversation and interview with [J.B.], did you ever ask her if she had any marks on her body?

A.    Yes, sir.

Q.    Okay.  And what did she indicate to you?

A.    She told me she had two hickeys that were on her breasts, but that they were gone at this time.

14

Q.     Okay.  But she did not indicate that the hickeys were a result of Mr. Pratt?

Tr. Vol. II at 61.  The State's objection to this question was sustained by the trial court.  As

the trial court explained: "There is no reason to tell this jury they did not come from Mr.

Pratt.  They did not know about them until you just now brought them up."  Tr. Vol. II at 62.

The trial court then gave the following admonishment to the jury: "Okay.  Ladies and

Gentlemen of the jury, the last question placed by counsel to the witness was an improper

question.  It is not to be a part of this trial and you are not to allow it to enter into your

deliberations."  Tr. Vol. II at 63.  The trial court properly excluded this evidence under

Oklahoma law.  *See* Okla. Stat. tit. 12, § 2412(A)(2); *see also Mitchell v. State*, 884 P.2d

1186, 1199 (Okla. Crim. App. 1994) ("[W]here consent is not at issue, a defendant should

be prohibited from cross-examination regarding the victim's prior sexual relations with

others, and such cross-examination is improper when directed to any witness, not just the

victim."), *habeas relief granted on other grounds*, *Mitchell v. Ward*, 150 Supp. 2d 1194,

1232-1233 (W.D. Okla. 1999).

### 2.     Admission of Evidence of Petitioner's Prior Conviction

Petitioner next contends evidence of his prior conviction was improperly admitted

during the guilt phase of the trial and he was prejudiced by its admission because the jury

was never advised the prior conviction was not for a sex-related offense.  The record

establishes that Petitioner's prior conviction was for the offense of armed robbery.

Throughout the first-stage proceedings many references were made to Petitioner's

prior incarceration.  Tr. Vol. I at 12, 18; Vol. II at 178, 182, 204-207,  209, 212, 225.  The

record further discloses that Petitioner was going to testify at trial as to his former conviction. Tr. Vol. III at 9.  For this reason, no objections were made by defense counsel to the prior references about Petitioner's prior incarceration.  However, on the last day of the trial Petitioner advised his counsel that he had decided not to testify on his own behalf.  Tr. Vol. III at 10.

Significantly, Petitioner does not challenge the admission of the evidence as prior crimes evidence.  Rather, Petitioner contends the jury should have been told the prior conviction was an armed robbery conviction –  not a sex offense.  Petitioner has failed to demonstrate how this distinction would have had less of a prejudicial impact on the jury.  To the extent Petitioner contends defense counsel was ineffective for failing to object to the admission of this evidence, the record discloses defense counsel exercised sound trial strategy under the belief that Petitioner intended to testify.

### 3.     Admission of Hearsay

Petitioner next contends hearsay evidence was improperly admitted.  T.M. testified that her older sister, Christina, warned both [T.M.] and the girls' mother, Wanda Pratt, about Petitioner:

> Q.     Did Christina ever tell you about a time when – before all of this happened to you did Christina ever tell you about your stepdad touching her?
>
> A.     She did warn me and she warned mom.  She kept on telling mom that you better watch out for [T.M.].

Tr. Vol. II at 87.  Defense counsel did not object to this question and the response given by the witness.  However, defense counsel did object to the prosecutor's question immediately

following this response which also was framed to elicit hearsay. *See* Tr. Vol. II at 87 ("And did Stacey ever tell you about your stepdad touching her prior to--"). The trial court sustained the objection to this question. Tr. Vol. II at 87-90.

 Christina Mercer testified at trial, was subject to cross-examination, and denied any warning. Therefore, any potential harm created by the hearsay was cured by her testimony. Further, the record as a whole contains strong evidence of Petitioner's guilt. *See, e.g., Thomas v. Gibson*, 218 F.3d 1213, 1225 (10th Cir. 2000) (claim that admission of hearsay evidence rendered habeas petitioner's trial fundamentally unfair required "review of the entire record" and consideration of the error "in relation to all else that happened"). Petitioner fails to show the admission of this hearsay statement was unduly prejudicial or violated his constitutional right to due process by rendering his trial fundamentally unfair.

Petitioner also challenges testimony of Dr. Ferguson, the doctor who examined the victim, J.B., following the alleged incidents of abuse. Petitioner contends Dr. Ferguson testified about the statement he had taken in the context of rendering medical treatment:

Q.      What statement did you receive from the patient for purposes of your medical treatment?

A.      Well, basically like I wrote in my medical record [J.M.] described that she was staying at her aunt and uncle's house, that her uncle had come into the room where she was staying asking her to remove her jeans. She refused to do so so he removed her jeans for her and then removed her underwear to her knees and inserted two fingers into her vagina. She explained that she asked him to stop and screamed when he did this and that he then left the room and came back and repeated the scenario an hour or so later.

17

Tr. Vol. II at 190.  The trial court allowed this testimony over defense counsel's objection finding that this hearsay testimony was admissible because it was a statement given for the purpose of a medical diagnosis.  Tr. Vol. II at 190.  The evidence was properly admitted.  *See* Okla. Stat. tit. 12, § 2803(4).  *See also United States v. McHorse*, *supra*, 179 F.3d at 900-901 (upholding admissibility of similar evidence pursuant to Rule 803(4) of the Federal Rules of Evidence).

### 4.      Admission of Docket Sheet on Prior Conviction

As the final contention of trial error in his cumulative error claim, Petitioner contends his trial counsel should have objected to the admission of State's Exhibit 1 during the sentencing phase of this trial.  State's Exhibit 1 is the docket in Case No. CF-1993-5603, District Court of Oklahoma County, State of Oklahoma, which the State introduced as evidence of Petitioner's prior felony conviction for armed robbery.  Petitioner contends admission of this exhibit was unduly prejudicial because it makes reference to the co-defendants, Petitioner's brothers, and includes a notation "AFCF" thereby suggesting to the jury that Petitioner had an additional prior felony conviction.

Although some of the information contained on the docket sheet may have been irrelevant, Petitioner has not demonstrated that but for his counsel's failure to object to this evidence the result of the proceedings would have been different.  In closing argument, the prosecutor made mention of only one former conviction and properly asked the jury to consider that one conviction in reaching the sentence.  Petitioner was sentenced within the proper range of punishment under Oklahoma law.  There is no indication in the record that

18

the jury used irrelevant information contained in State's Exhibit 1 as a basis for imposing a harsher sentence upon Petitioner.  As the OCCA found on direct appeal: "The evidence against Pratt was substantial and compelling, and his sentence was reasonable for the crimes for which he was convicted."  *See* OCCA Opinion at 2, footnote 2.  That determination is reasonable based on the record before the court.

>       **C.      Cumulative Error Analysis Applied**

In this habeas action, Petitioner claims the cumulative effect of the alleged instances of prosecutorial misconduct and trial error deprived him of a fundamentally fair trial.  The OCCA found on direct appeal that "Pratt was not denied a fair trial by prosecutorial misconduct or any asserted trial errors" and further rejected Petitioner's cumulative error claim:

> Pratt asserts a litany of errors in this proposition.  Most were not error.  Of those that were, none of them either individually or cumulatively denied him a fair trial because they did not affect a substantial right, go to the foundation of the case, or contribute to the jury's verdict. [Citations omitted].

*See* OCCA Summary Opinion at 2 and footnote 2.  The Tenth Circuit has questioned the propriety of the OCCA's cumulative error analysis where the OCCA has used language substantially the same as that at issue here, finding that the language does not clearly indicate that the OCCA considered, in the aggregate, the prejudicial effect of individual errors, as required under federal law.  *See Malicoat v. Mullin*, 426 F.3d 1241, 1262-1263 (10th Cir. 2005).  In such cases, the Tenth Circuit has reviewed the cumulative error claim *de novo*.  *Id*.

19

A review of Petitioner's cumulative error claim *de novo*, however, clearly shows that Petitioner has failed to demonstrate that the collective impact of any errors denied him a fundamentally fair trial.   As set forth above, the prosecutor's remarks challenged by Petitioner did not constitute misconduct.   At most, one remark in the sentencing phase, referencing "four victims," could potentially have been confusing taken out of context, but in context the remark could not have misled the jury.   Petitioner's challenges to the admission or exclusion of evidence demonstrate at most the erroneous admission of some irrelevant information and a minimal amount of hearsay testimony, any harm of which was cured by the trial testimony of the declarant.   Here, the evidence against Petitioner was compelling and, in light of the strong evidence against Petitioner, there is no indication that the identified evidentiary errors or arguable instance of prosecutorial misconduct affected the jury's decision  *See id.* at 1263.   Thus, as in *Malicoat*, Petitioner has not established that the cumulative effect of individual errors had "a substantial and injurious effect or influence in determining the jury's verdict."   *Id* (*citing* and *quoting Brecht v. Abrahamson*, *supra*, 507 U.S. at 637).   Ground Two of the Petition should be denied.

### Ground Three – Sufficiency of the Evidence as to Count VI

As his third ground for relief, Petitioner challenges the sufficiency of the evidence with respect to Count VI, one of the six counts charging Petitioner with rape in the first degree by instrumentation.   Petitioner raised this claim on direct appeal and the OCCA granted relief.   *See* OCCA Opinion at 2 ("We find in Proposition III that the evidence for Count VI was insufficient.").   The OCCA reversed the conviction as to Count VI and

20

remanded with instructions to dismiss.  *Id.*  Therefore, Petitioner has been granted the relief to which he is entitled and the claim raised in Ground Three of the Petition is moot.[7]

### Ground Four  – Ineffective Assistance of Trial and Appellate Counsel

In Ground Four, Petitioner alleges trial counsel rendered ineffective assistance in violation of his Sixth Amendment right to counsel by failing to (1) file for a speedy trial which resulted in a failure to conduct an immediate investigation;[8] (2) request full discovery; (3) move to suppress other crimes evidence and to file or assist with presentation of other defense motions; (4) inform the jury that not calling witnesses was part of Petitioner's trial strategy; and (5) request that Petitioner's sentences run concurrently.  Petitioner further claims appellate counsel was ineffective for failing to investigate and raise the claims of ineffective assistance of trial counsel on direct appeal.

The OCCA affirmed the district court's denial of post-conviction relief as to Petitioner's claims of ineffective assistance of trial counsel finding those claims were barred from review as claims that were or could have been raised on direct appeal.  *See* Response, Exhibit 5, OCCA Order Affirming Denial of Post-Conviction Relief at 2.  The OCCA reviewed the merits of Petitioner's claim of ineffective assistance of appellate counsel and determined Petitioner had failed to establish a violation of his Sixth Amendment right to counsel.  *See* OCCA Order Affirming Denial of Post-Conviction Relief at 2-3.  Citing

---

[7]Petitioner concedes in his Reply [Doc. #36] that the claim raised in Ground Three is now moot.  *See id.* at 6 ("Proposition III, moot").

[8]Petitioner does not allege a violation of his Sixth Amendment right to a speedy trial.  Rather, his allegations are framed as an ineffective assistance of counsel claim.

*Strickland v. Washington*, 466 U.S. 668 (1984), the OCCA concluded that Petitioner had failed to establish that appellate counsel's performance was deficient. In addition, the OCCA determined Petitioner had failed to establish that the result of his appeal was not reliable and fair. *Id.*[9]

Because the OCCA addressed the merits of Petitioner's ineffective assistance of appellate counsel claim, Petitioner is entitled to federal habeas relief only if the OCCA's determination of the claim is contrary to or an unreasonable application of *Strickland*. Petitioner must show not only that the OCCA's application of *Strickland* was erroneous, but that it was objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

---

[9]Respondent contends Petitioner's ineffective assistance of trial counsel claim raised in Ground Four is procedurally barred but has also addressed the merits of the claim. On federal habeas review, the merits of a claim will not be considered if the claim has been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998).

Petitioner asserts a claim of ineffective assistance of appellate counsel based on appellate counsel's failure to raise his ineffective assistance of trial counsel claims on direct appeal. Where ineffective assistance of appellate counsel is raised as cause for excusing a procedural default, application of *Strickland* requires the Court to look to the merits of the omitted issue. *Hain v. Gibson*, 287 F.3d 1224, 1231 (10th Cir. 2002); *United States v. Cook*, 45 F.3d 388, 392 (10th Cir.1995) (to determine if appellate counsel provided ineffective assistance by failing to raise an issue on appeal "we examine the merits of the omitted issue"). If the omitted issue is meritless, counsel's failure to appeal it is not a Sixth Amendment deprivation. *Cook* 45 F.3d at 392-393. Accordingly, the merits of Petitioner's ineffective assistance of trial counsel claims are addressed.

### A.      __Failure to Take Prompt Action__

Petitioner first claims that had trial counsel filed a "speedy trial motion" "he could have proven the crimes never happen[ed]."  *See* Petitioner's Reply [Doc. #36] at 7-8. Petitioner contends that trial counsel should have more promptly investigated the case and contacted witnesses.  In relation to this claim of error, Petitioner does not identify what evidence a more prompt investigation would have disclosed and, therefore, Petitioner fails to satisfy his burden of showing deficient performance that prejudiced his defense.[10]  In Ground Five, Petitioner raises a separate claim of ineffective assistance of counsel based upon counsel's failure to call witnesses to testify on his behalf at trial.  Any error arising from counsel's alleged failure to investigate is addressed in the context of that claim for relief.

### B.      __Failure to Assist in Petitioner's Defense__

Petitioner contends trial counsel did not assist in his defense because he never consulted with Petitioner or discussed with Petitioner any witnesses or trial strategy.  As support for this argument, Petitioner submits numerous letters he wrote to his counsel, to the Oklahoma Bar Association, and to various state judges complaining about his counsel's

---

[10]As the state district court found in denying post-conviction relief on this claim:

Petitioner claims that appellate counsel should have raised the issue that trial counsel did not file a motion for speedy trial. There is no evidence or explanation how raising that issue could have changed the outcome at trial. Thus, petitioner fails to meet his burden under the second prong of *Strickland*.

*See* Order Denying Application for Post-Conviction Relief at 6, attached to Response, Exhibit 4, Petition in Error.

failure to meet with him on more than a very cursory basis.  *See* Petitioner's Reply, Exhibits A-D.  Petitioner fails to support this claim with any showing of how his counsel's alleged lack of communication with him prejudiced his defense.  A failure to consult, without an accompanying showing of prejudice, is insufficient to establish a deprivation of the Sixth Amendment right to counsel.[11]

### C.    Failure to Obtain Full Discovery

Petitioner contends that trial counsel failed to obtain "full discovery" in this case.  He identifies the following information in support of this claim: (1) statements made by the alleged victims; (2) other crimes witnesses; and (3) medical records "demonstrating J.B. had an intact hymen."  Petitioner's Reply at 8.  Petitioner does not support his conclusory claim with any demonstration as to how defense counsel's alleged failure to obtain full discovery in relation to these matters prejudiced his defense.[12]  The victims each testified at trial and

---

[11]The state district court made the following finding regarding this claim:

> Petitioner also claims that appellate counsel was ineffective for failing to raise the proposition that trial counsel was ineffective for failing to have timely meetings with petitioner.  Once again, he offers no explanation as to how this likely would have changed the outcome of trial.

*See* Order Denying Post-Conviction Relief at 6.

[12]As the state district court found:

> There is no evidence of any kind that the State withheld any evidence from petitioner, or that there was any evidence of significance that it would have created a reasonable probability of changing the outcome at trial.

*See* Order Denying Post-Conviction Relief at 6.

were subject to cross-examination by defense counsel.  The "other crimes" witnesses also testified at trial and were subject to cross-examination.  The doctor who examined J.B., Dr. Ferguson, testified, consistent with the alleged medical report, that he found no signs of physical trauma.  Tr. Vol. II at 191.  This claim, therefore, lacks merit.

### D.   Failure to Assist with *Pro Se* Motions Filed by Petitioner

Petitioner next claims trial counsel failed to assist him in the filing of two *pro se* motions requesting "full discovery."  In addition, he contends trial counsel did not assist him with the filing of a "motion to quash testimony hearsay statements and dismiss hostile witness."  Petitioner's Reply at 9-10.  Once again, it is not enough for Petitioner to allege his counsel did not assist him.  Petitioner must demonstrate that counsel's failure to assist constitutes deficient performance and, further, that the deficient performance prejudiced his defense.[13]  Petitioner's conclusory allegations are insufficient to support an ineffective assistance of counsel claim.[14]

---

[13]Regarding this claim, the state district court found:

> Petitioner makes these complaints without a showing of how these motions or responses could have changed the outcome of trial.  He continues to merely make allegations of ineffective assistance without offering the required explanation as to how any of these failures on the part of trial counsel could have changed the outcome at trial.

*See* Order Denying Post-Conviction Relief at 7.

[14]In the context of this claim, Petitioner further asserts that the district court failed to hear Petitioner's Motion to Dismiss Attorney.  *See* Petitioner's Reply at 10. Any error committed by the district court in this regard is not material to Petitioner's habeas claim of ineffective assistance of counsel.

### E.      **Failure to Inform the Jury of Trial Strategy**

At trial, the defense rested following the prosecution's case without calling any witnesses.  Tr. Vol. II at 229.  Petitioner contends trial counsel was ineffective for "fail[ing] to inform the jury that not calling witnesses was a trial strategy."  *See* Petitioner's Reply at 10.  As with Petitioner's other claims of ineffective assistance of trial counsel, here he wholly fails to demonstrate how this alleged performance by counsel was deficient and prejudicial. Indeed, had trial counsel made such a statement to the jury, the implications attached to such statement might have been more prejudicial to Petitioner as the jury would have been left to speculate as to why the witnesses were not going to testify.[15]

### F.      **Failure to Request that Sentences Run Concurrently**

As his final claim of ineffective assistance of trial counsel raised in Ground Four of the Petition, Petitioner claims trial counsel filled out the judgment and sentence form with all counts to run consecutively, not concurrently.  He contends but for counsel's actions, the trial court "may have used the better discretion, and ran the counts concurrently."  *See* Reply at 11.  This allegation is refuted by the record.  At formal sentencing on June 1, 2001, trial counsel made the following request regarding Petitioner's sentence:

---

[15]Rejecting this claim, the state district court found:

> It is more likely that had trial counsel made this statement to the jurors it may have been error, as this statement could have be [sic] interpreted that these witnesses would hurt his case.  Regardless, petitioner once again fails to show this Court that the results of the trial could have changed had this statement been made to the jury.

*See* Order Denying Post-Conviction Relief at 7.

26

> Your Honor, in regards to the sentencing, as the Court has stated the jury on all 7 Counts gave Mr. Pratt 45 years each. We would ask the Court to take into consideration that Mr. Pratt had employment before he began. He believes he can resume employment. The PSI indicates that Mr. Pratt has a supportive family unit. His wife and his mother are present here today to continue their support of Mr. Pratt.
>
> We would ask the Court to [do] one of two things: We would either ask the Court to impose a split sentence and we would suggest to the Court or ask the Court to impose a split sentence of a 10-year in followed with a 35-year suspended sentence or in the alternative to run all of the counts concurrently for a 45-year sentence.

*See* Transcript of Sentencing at 8-9. Because Petitioner's counsel requested concurrent sentences, Petitioner's claim of ineffective assistance of counsel is without merit.[16]

In sum, each of the alleged instances of ineffective assistance of trial counsel in Ground Four are without merit. Therefore, Petitioner has failed to demonstrate that appellate counsel was ineffective in failing to raise these claims of ineffective assistance of trial counsel on direct appeal. The OCCA's determination of Petitioner's ineffective assistance of appellate counsel claims is not contrary to or an unreasonable application of *Strickland*. Ground Four of the Petition should be denied.

### Ground Five – Ineffective Assistance of Counsel/Failure to Investigate

In Ground Five of the Petition, Petitioner claims that trial and appellate counsel failed to contact potential witnesses and investigate Petitioner's case.[17] In support of this claim,

---

[16]The state district court rejected this claim finding that "petitioner is being untruthful in this allegation." *See* Order Denying Post-Conviction Relief at 8.

[17]Respondent contends Petitioner's claim of ineffective assistance of trial counsel raised in Ground Five of the Petition is procedurally barred because Petitioner did not raise this claim until

(continued...)

Petitioner submits affidavits from the following persons: (1) Wanda Pratt, Petitioner's wife; (2) Trina Miller, the girlfriend of the older brother of the victim, T.M.; (3) Alice Pratt, Petitioner's mother; (4) Valerie Fowler, a long-time friend of Petitioner; and (5) Micky Formen, a long-time friend of the Pratt family. *See* Petitioner's Reply, Exhibit A-1. Of these persons, only Wanda Pratt testified at trial.

The Court has reviewed each of the affidavits. The affidavits largely contain hearsay statements relating what third-persons might testify to regarding the character of Petitioner and the character of the victims. The affidavits additionally contain hearsay statements about motives the victims may have had for fabricating allegations of abuse. Nothing contained in these affidavits demonstrates that counsel rendered deficient performance by not calling these witnesses to testify at trial, nor do the affidavits demonstrate Petitioner was prejudiced by the strategic decision of counsel not to call these witnesses.

Petitioner also identifies additional witnesses he claims defense counsel should have called on his behalf including: (1) a minor named "Ashley" regarding the motives of J.B. and

---

[17](...continued)

he applied for post-conviction relief. Respondent has also addressed the merits of the claim. Unlike the claim raised in Ground Four, Petitioner does not claim as cause to excuse this procedural default, that appellate counsel was ineffective for failing to raise this claim on direct appeal. Rather, he claims appellate counsel was ineffective for independently failing to investigate. The OCCA denied Petitioner's ineffective assistance of appellate counsel on the merits. Because Petitioner relies upon the same information as the basis for both his trial and appellate counsel failure to investigate claim, the analysis of those claims under *Strickland* is the same. Therefore, the Court has not addressed whether Petitioner's ineffective assistance of trial counsel claim is procedurally barred. *See, e.g., Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir.2000) (declining to address Colorado's procedural bar to petitioner's claims "because the case may be more easily and succinctly affirmed on the merits").

T.M.; (2) Lieutenant Jim Hall of the Henryetta, Oklahoma police department, regarding a prior investigation against J.B.'s step-father; and (3) and Ronnie Deliea and John Reynolds, Petitioner's employer and job supervisor, respectively, regarding Petitioner's productivity on the job and evidence that Petitioner had no "sexual deviation problems" on the job. Petitioner's Reply at 12-15.  Petitioner provides cursory descriptions of these witnesses' purported testimony but provides no supporting affidavits. Even if such affidavits had been provided, Petitioner has failed to demonstrate that trial counsel rendered deficient performance that prejudiced his defense by not calling these individuals as witnesses.  The descriptions provided by Petitioner do not demonstrate that there is a reasonable probability that the outcome of the trial would have been different had these witnesses been called to testify.

Similarly, Petitioner has failed to demonstrate that appellate counsel rendered deficient performance by failing to contact these witnesses prior to filing Petitioner's direct appeal.  Moreover, the record includes a letter from Petitioner's appellate counsel where appellate counsel advised Petitioner as follows:

> You state your trial counsel 'did not call one of my witnesses.'  If this is a serious issue that needs to be looked into, then you need to provide me with the names, addresses, and telephone numbers for these witnesses and a summary of anticipated testimony.

*See* Petitioner's Reply, Exhibit A-1 at 2, Letter from Wendell Sutton dated January 4, 2002. Petitioner responded by letter dated January 14, 2002, with cursory descriptions of what his witnesses were going to testify about but failed to identify the witnesses.  *See* Motion for

Evidentiary Hearing [Doc. #34], Exhibit Y at 3-4.  The cursory descriptions of the testimony fail to establish that any of the testimony was material to the defense.

In response to this letter, appellate counsel wrote a letter to Petitioner dated January 17, 2002, and stated the following regarding Petitioner's request to challenge defense counsel's decision not to call witnesses:

> The trial transcript reflects that you did not object at the time Mr. McKesson first announced the defense would be resting without calling any witnesses, and that you expressly waived your right to testify.  Basically, this case came down to your word against the State witnesses and you chose not to testify. The appeal record reflects two potential defense witnesses, other than Wanda Pratt (who was called to testify by the State): Phyllis Conry and Alice Pratt. How did not calling Ms. Conry and Ms. Pratt deprive you of a fair trial? Generally, with rare exceptions, the decision to call or not call witnesses is a matter of trial strategy that will not be second-guessed on appeal.

*See* Motion for Evidentiary Hearing, Exhibit Y at 11(a)-11(b).  After Petitioner's appellate brief was filed, Petitioner wrote a letter to appellate counsel dated March 4, 2002, and asked appellate counsel why he did not raise the issues regarding the witness testimony.  *See* Motion, Exhibit Y at 7.  Appellate counsel responded by letter dated March 8, 2002, and stated:

> Generally, the decision to call witnesses is a strategy decision by trial counsel. With all due respect to your position, I did not believe under the facts of your case that this was an issue upon which the Court of Criminal Appeals was likely to grant relief.  The trial judge did not "conceal" the evidence.  Your trial counsel stated on the record in open court that it was a strategy decision not to call those witnesses.  After exploring the issue myself, I concluded that it was not an issue that would advance your cause on appeal and I chose not to include it in your appeal brief.

*See id* at 14.   The record reflects appellate counsel made a sound strategic decision in choosing not to raise the additional claims urged by Petitioner.   As the Supreme Court explained in *Strickland*:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-691.

Petitioner's appellate counsel exercised reasonable professional judgment, and Petitioner has failed to establish either that his appellate counsel rendered deficient performance or that he was prejudiced by appellate counsel's alleged deficient performance. The OCCA's determination that Petitioner's Sixth Amendment rights had not been violated is neither contrary to nor an unreasonable application of *Strickland*.

### Ground Six – Trial Counsel's Failure to Present Evidence

In Ground Six of the Petition, Petitioner again challenges the performance of trial counsel.[18]   In this ground for relief, Petitioner primarily contends that trial counsel did not

---

[18]Again, Respondent contends this claim is procedurally barred because it was raised for the first time in Petitioner's application for post-conviction relief.  As with the other claims Respondent contends are procedurally barred, Respondent has also addressed the merits of this claim.  It appears Petitioner asserts appellate counsel was also ineffective for failing to raise this claim on direct appeal.  Therefore, the Court has addressed the merits of the claim rather than conducting a procedural bar analysis.

utilize evidence to challenge the credibility of the victims.  Each of the victims testified at trial and was subject to cross-examination by defense counsel.  The record shows defense counsel conducted a thorough cross-examination of these witnesses.  To the extent defense counsel chose not to raise some of the issues Petitioner raises, Petitioner has failed to overcome the strong presumption that defense counsel exercised sound trial strategy.

### Ground Seven – Abuse of Discretion by the Trial Court

In his final claim of error, Petitioner contends the trial judge violated his request for compulsory process by refusing to allow Petitioner to make a record concerning the witnesses and evidence he would have called and instead concluding that such matters pertained to trial strategy subject to counsel's discretion.  *See* Tr. Vol. III at 14-17.  Petitioner did not raise this claim on direct appeal, and the state courts deemed the claim to be barred from review as a claim that could have been raised on direct appeal.  *See* Response, Ex. 5, OCCA Order Affirming Denial of Post-Conviction Relief.  As cause to excuse the procedural bar Petitioner claims appellate counsel was ineffective for failing to raise the claim on direct appeal.  The OCCA found Petitioner's claim of ineffective assistance of appellate counsel to be without merit.  *See id*.  Therefore, Petitioner is only entitled to federal habeas corpus relief if the OCCA's determination of Petitioner's ineffective assistance of appellate counsel clam is contrary to or an unreasonable application of *Strickland*.

The record at trial reflects that the trial court refused to allow Petitioner to discuss the witnesses he wanted to call or the evidence he wished to admit on the ground that such matters were part of defense counsel's trial strategy.  *See* Tr. Vol. III at 14-17.  It appears

from the trial record and the submissions Petitioner makes in this habeas action that the primary witness testimony Petitioner wanted to offer in his defense was that of a girl named Ashley. According to Petitioner's submissions, Ashley would have testified that the victims J.B. and T.M. tried to get her to lie and say that Petitioner also "touched" her. *See, e.g.,* Petitioner's Reply, Ex. A-1, Affidavit of Wanda Pratt, ¶ 40. *See also* Tr. Vol. III at 15-16 ("The girls were trying to call another young lady to specifically ask her would she lie and say that I did this to her.").[19]

To establish a violation of his right to compulsory process, Petitioner must show that his trial was rendered fundamentally unfair. *Young v. Workman*, 383 F.3d 1233, 1238 (10th Cir. 2004). The materiality of the excluded evidence to the defense determines whether a petitioner has been deprived of a fundamentally fair trial. *Id*. (citations omitted). Material evidence is evidence exculpatory in nature, that is, evidence that if admitted, would create a reasonable doubt that did not exist without the evidence. *Id*. (citations omitted). Petitioner has failed to attach any evidentiary support – in the form of an affidavit from the witness or otherwise – to substantiate this purported testimony. Under these circumstances, Petitioner has failed to demonstrate that material evidence was excluded or that the exclusion of that evidence denied him a fundamentally fair trial.

---

[19]T.M. testified that Ashley was in bed with her during one of Petitioner's acts of sexual abuse against her. Tr. Vol. II at 76-77. T.M. further testified that "after that night [Ashley] spent the night she did act strange and she didn't want to ever come back over to my house." Tr. Vol. II at 85.

Petitioner also contends that a letter written by the victim, T.M., was not presented to the jury for consideration and the trial court's refusal to submit this evidence to the jury violated his compulsory process rights.  Petitioner has submitted a copy of the letter in this habeas action.  *See* Petitioner's Reply, Ex. E.  The letter provides, in essence, that if Petitioner would give 14 designated items to T.M. including money, jewelry and clothing, then T.M. would talk to the victim J.B. about "dropping the charges."  The letter further states: "remember I'll always forgive you but I'll never never forget what you did.  The only reason why I am doing this is because I what [sic] the 14 things and I am not as close to [J.B.] now and people don't believe me no more."  *See id.*  The letter is not exculpatory in nature. Petitioner fails to establish that his trial was rendered fundamentally unfair as a result of the trial court's decision to respect defense counsel's strategic decision not to offer the letter into evidence for consideration by the jury.

Appellate counsel was not ineffective for failing to raise this claim on direct appeal, and the OCCA's determination that Petitioner's Sixth Amendment right to the effective assistance of appellate counsel was not violated is not contrary to or an unreasonable application of *Strickland.*

## V.    <u>Pending Motions</u>

Petitioner has filed a Motion for Evidentiary Hearing and Brief in Support [Doc. ##34-35].  Petitioner has also filed  a Motion of Abeyance [Doc. #33] requesting the Court to hold this matter in abeyance pending determination of his Motion for Evidentiary Hearing.

"Under the AEDPA, a court cannot hold an evidentiary hearing unless (1) the claim relies on a new rule of constitutional law or a factual predicate that could not have been previously discovered, and (2) the facts underlying the claim are sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable jury would have found the petitioner guilty." *Bland v. Sirmons*, *supra*, 495 F.3d at 1033 (*citing* 28 U.S.C. § 2254(e)(2)).  If, however, a habeas petitioner has diligently sought to develop the factual basis underlying his habeas petition but the state court has prevented him from doing so, the pre-AEDPA standard governs the determination as to whether to grant an evidentiary hearing.  *Id*.  Under that standard, a habeas petitioner is entitled to an evidentiary hearing if "his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998).

The parties dispute whether Petitioner diligently sought to develop the factual basis underlying his habeas petition.  Even applying the more lenient pre-AEDPA standard, however, Petitioner is not entitled to an evidentiary hearing.  Petitioner relies upon the same arguments he makes in support of his claims of ineffective assistance of counsel.  As in *Bland*, "[h]aving considered the evidence [Petitioner] would introduce at an evidentiary hearing to support his claims of ineffective assistance of counsel and having found no meritorious ineffective-assistance-of-counsel claim, [the Court] finds that he has not established an entitlement to habeas relief." *Id*. at 1033.  Therefore, Petitioner's request for an evidentiary hearing should be denied.

35

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied. It is further recommended that Petitioner's Motion of Abeyance [Doc. #33] and Motion for Evidentiary Hearing [Doc. ##34-35] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by October __18th__, 2006.  *See* Local Civil Rule 72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all matters referred by the District Judge in this case and terminates the referral.

DATED this __28th__ day of September, 2006.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE